**SO ORDERED.**

**SIGNED this 26 day of February, 2013.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

IN RE:

| | |
|---|---|
| TANGLEWOOD FARMS, INC. OF ELIZABETH CITY,<br><br>    DEBTOR. | CASE NO. 10–06719–8–JRL<br><br>CHAPTER 7 |
| JAMES B. ANGELL, CHAPTER 7 TRUSTEE,<br><br>    PLAINTIFF,<br><br>    v.<br><br>ENDCOM, INC.,<br><br>    DEFENDANT. | <br><br>ADVERSARY PROCEEDING<br>NO. 12–00187–8–JRL |

**ORDER**

This matter came before the court on Endcom, Inc.'s ("defendant") motion to dismiss this adversary proceeding for failure to state a claim upon which relief can be granted, to which James B. Angell ("trustee") has objected. A hearing on the matter was held on January 10, 2013 in Raleigh, North Carolina. At the conclusion of the hearing, the court took the matter under

1

advisement and allowed the parties ten days to file supplemental briefs.

## BACKGROUND[1]

Tanglewood Farms, Inc. of Elizabeth City ("debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on August 20, 2010, which was subsequently converted to one under chapter 7 on July 12, 2011. On August 23, 2010, James H. Winslow ("Mr. Winslow") and his wife, Billie Winslow ("Mrs. Winslow") (collectively "Winslows") filed a joint voluntary petition under chapter 11 of the Bankruptcy Code. Prior to and at the time of both filings, Mr. Winslow was the president and sole shareholder of the debtor. In that capacity, he oversaw the debtor's granary operations in Pasquotank County, North Carolina and made decisions concerning the assets, liabilities and relationship between the debtor and his personal farming operation, Winslow Farms. See In re Tanglewood Farms, Inc. of Elizabeth City, No. 10–06719, 2011 WL 672060, at *1–2 (Bankr. E.D.N.C. Feb. 18, 2011) (denying motion to substantively consolidate the two chapter 11 cases although testimony revealed "that the creditors identified the debtors as one entity . . . and the general impression from the community led [the appointed chief restructuring officer] to believe that Mr. Winslow administered the two farms under one identity.").[2]

On September 15, 2008, the debtor and Mr. and Mrs. Winslow individually executed a promissory note in favor of the defendant in the original principal amount of $600,000.00

---

[1]These facts are a fair distillation of the complaint taken in the light most favorable to the non–movant, the trustee. GE Inv. Private Placement v. Parker, 247 F.3d 543, 548 (4th Cir. 2001).

[2]This court concluded that "[c]onsolidation in this instance will result in significant dilution of the claims by forcing the creditors of the Winslows to 'share on a parity with creditors of a less solvent debtor,' Tanglewood." Tanglewood Farms, Inc., 2011 WL 672060, at *2 (citing In re Augie/Restivo Baking Co. Ltd., 860 F.2d 515, 518 (2d Cir. 1988)).

("promissory note"). The promissory note was a demand note, which became due and payable on or before December 15, 2008. To secure repayment and performance of the obligations thereunder, the parties executed a security agreement granting the defendant a security interest in 113,208 bushels of harvested corn belonging to the debtor ("security agreement"). Both the promissory note and security agreement were executed by Mr. Winslow, individually and as the president of the debtor, as well as Mrs. Winslow. The proceeds of the loan, approximately $597,410.00, were deposited into the personal bank account of the Winslows at Wachovia Bank, N.A. on September 19, 2008. On October 31, 2008, the debtor tendered to the defendant a check in the amount of $50,000.00. Prior to the petition dates and unbeknownst to the defendant, the bushels of corn pledged as security for the promissory note were sold by the debtor, without the defendant's consent. The proceeds of the sale, however, were not paid to the defendant.[3]

The trustee filed a complaint initiating this adversary proceeding on August 19, 2012, asserting two separate causes of action to avoid and recover three alleged constructively fraudulent transfers pursuant to §§ 544, 548, 550 and 551 of the Bankruptcy Code and N.C. Gen. Stat. § 39–23.1 et seq. On September 9, 2012, the defendant filed the motion to dismiss currently before the court. The defendant submitted a brief in support of its motion to dismiss on November 27, 2012. On January 9, 2013, the trustee filed a memorandum of law in opposition to the defendant's motion to dismiss and in accordance with the court's oral ruling at the conclusion of the hearing held on January 10, 2013, the trustee filed a supplemental memorandum of law on January 22, 2013.

---

[3]The defendant filed an adversary proceeding against Mr. Winslow in the Winslows' individual bankruptcy case, seeking a determination that this particular obligation under the promissory note was nondischargeable, No. 11–00057. On June 20, 2011, this court entered an order declaring the obligation nondischargeable as to Mr. Winslow.

3

**STANDARD OF REVIEW**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires every pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2); Fed. R. Bankr. P. 7008.  A party may move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b).  To demonstrate entitlement to relief and survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (emphasizing that a pleading providing "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."(citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (internal citations, quotation marks and brackets omitted).  The veracity of well–pleaded allegations in the complaint will be assumed in determining "whether they plausibly give rise to an entitlement to relief." Angell v. BER Care, Inc. (In re Caremerica, Inc.), 409 B.R. 737, 747 (Bankr. E.D.N.C. 2009) (citation omitted).

**DISCUSSION**

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Bankruptcy Procedure 7012, the defendant alleges that the trustee's causes of action must be dismissed for

failure to state a claim upon which relief may be granted.[4]  However, the trustee's complaint alleges, with respect to the obligation and payment alleged to be fraudulent, that the debtor received less than reasonably equivalent value in exchange.  Therefore, the dispute before the court is whether the trustee's complaint for avoidance and recovery of the constructive fraudulent transfers contains sufficient facts to support a plausible belief that the debtor did not receive reasonably equivalent value in exchange for the obligation incurred under the promissory note and in return for the $50,000.00 payment made to the defendant.

Section 548 of the Bankruptcy Code permits the trustee to avoid, based on a theory of constructive fraud, "any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred . . . within two years before the date of the fling of the petition," provided the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation[]" and either

>   (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
>   (II) was engaged in business or a transaction, or was about to engage in business or

---

[4] With regard to the trustee's first cause of action, the defendant conceded that its claim in the debtor's case was, for distribution purposes, unsecured.  This concession, according to the defendant resolves the trustee's first cause of action to avoid the underlying obligation incurred by the debtor and security interest granted to the defendant.  Because the defendant conceded that its claim is unsecured, the court need not address, for purposes of this motion, the avoidance of the security interest.  However, the concession does not, as the defendant suggests, resolve the issue of whether the underlying obligation incurred by the debtor is avoidable.

For purposes of its motion to dismiss, the defendant does not dispute that the obligation incurred by the debtor and the $50,000.00 payment made in partial satisfaction of that obligation were within the two years prior to the petition date or that the debtor was insolvent on the date of the challenged transfers or became insolvent as a result.  Specifically, the defendant contends that the debtor received reasonably equivalent value in exchange for the $50,000.00 payment it made to the defendant.

>a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>
>(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>
>(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B); BER Care, Inc., 409 B.R. at 754. To avoid payments as constructively fraudulent, the trustee must prove by a preponderance of the evidence, that the challenged payments were not made in exchange for reasonably equivalent value. 11 U.S.C. § 548(a)(1)(B). Value, as defined in § 548(d)(2)(A), includes the "satisfaction or securing of a present or antecedent debt of the debtor . . . ." BFP v. Resolution Tr. Corp., 511 U.S. 531, 535–36 (1994) (citation and internal quotation marks omitted); 11 U.S.C. § 548(d)(2)(A); see, e.g., Cooper v. Ashley Commc'ns Inc.( In re Morris Commc'ns NC, Inc.), 914 F.2d 458, 466 (4th Cir. 1990) ("Section 548 provides no definition to guide the Court in the application of the term 'reasonably equivalent value.' Congress left to the courts the obligation of marking the scope and meaning of such term."); Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.I., Inc. (In re R.M.I., Inc.), 92 F.3d 139, 148 (3d Cir. 1996) (recognizing "that the mere 'opportunity' to receive an economic benefit in the future constitutes 'value' under the [Bankruptcy] Code."). "In contrast to actual fraud, a claim for constructive fraud focuses on the effect the transfer had on the debtor's financial condition without regard for the debtor's state of mind or intentions." Cox v. Grube (In re Grube), No. 09–8111, 2012 WL 3263905, at *6 (Bankr. C.D. Ill. Aug. 9, 2012) (citations omitted)).

Section 544 of the Bankruptcy Code allows the trustee to avoid any transfer of the debtor's property or obligation incurred by the debtor under the North Carolina Uniform Fraudulent

Conveyance Act, N.C. Gen. Stat. § 39–21.1, provided an unsecured creditor existed at the time of the transfer. 11 U.S.C. § 544(a). Under N.C. Gen. Stat. § 39–23.4, "a transfer is fraudulent if made without receiving reasonably equivalent value; and, the debtor was either engaged in a business transaction for which the remaining assets of the debtor were unreasonably small in relation to the transaction, or the debtor knew debt incurred was beyond the debtor's ability to pay." Beaman v. Barth (In re AmerLink, Ltd.), No. 10–00164, 2011 WL 1048848, at *3–4 (Bankr. E.D.N.C. Mar. 18, 2011) (citing N.C. Gen. Stat. § 39–23.4).

The Fourth Circuit has emphasized that when evaluating reasonably equivalent value "[t]he focus is on the consideration received by the debtor, not on the value given by the transferee. The purpose of fraudulent transfer law is the preservation of the debtor's estate for the benefit of its unsecured creditors." Harman v. First Am. Bank (In re Jeffery Bigelow Design Grp., Inc.), 956 F.2d 479 (4th Cir. 1992) (holding that "what constitutes reasonably equivalent value must be determined from the standpoint of the debtor's creditors . . . ."); accord Barber v. Golden Seed Co., 129 F.3d 382, 387 (7th Cir. 1997) ("The test used to determine reasonably equivalent value in the context of a fraudulent conveyance requires the court to determine the value of what was transferred and to compare it to what was received."(citation omitted)). A large or significant disparity between what the debtor gave and what it received in exchange typically precludes a finding that the debtor received reasonably equivalent value. 5 Collier on Bankruptcy ¶548.05[2][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2012). "Courts generally find a lack of reasonably equivalent value when the transfer or obligations benefits a third party . . . . hold[ing] that such transfers provide no value to the debtor." Id. ¶548.05[2][b]. Although reasonably equivalent value may be the satisfaction of the antecedent debt or obligation of the debtor, it is not the satisfaction or guarantee

7

of the debt of another. Tourtellot v. Huntington Nat'l Bank (In re Renegade Holdings, Inc.), 457 B.R. 441, 444 (Bankr. M.D.N.C. 2011); see Dietz v. St. Edwards Catholic Church (In re Bargfrede), 117 F.3d 1078, 1080 (8th Cir. 1997) (per curium) (concluding that the debtor did not receive reasonably equivalent value in diverting his pension funds to satisfy a civil judgment against his wife); Leonard v. Norman Vinisky Residuary Tr. (In re Jolly's, Inc.), 188 B.R. 832, 842 (Bankr. D. Minn. 1995) (emphasizing that a transfer made solely for the benefit of a third party does not furnish reasonably equivalent value).

This court has emphasized that "[a]dequate pleadings under § 548(a)(1)(B) include a list of the alleged fraudulent transfers, identification of the consideration received by the transferee, and information concerning why the consideration was not equivalent in value." AmerLink, 2011 WL 1048848, at *3 (citing BER Care, 409 B.R. at 756). In AmerLink, this court dismissed the trustee's avoidance action, based on a constructive fraud theory, for failure to state a claim because the complaint failed to "show[] that the transaction was more than repayment on the [previously executed] note." 2011 WL 1048848, at *4–5 (dismissing a complaint because it lacked factual assertions to satisfy pleading standards where the "transaction mirrors a typical lender/borrower relationship: AmerLink sought loans, NCCB agreed to lend money, and promissory notes of equivalent value were executed in favor of NCCB.").

The complaint in this case asserts two separate causes of action. The first, based on §§ 548, 550 and 551, seeks avoidance of a promissory note and security agreement executed by the debtor in favor of the defendant during the two–year period prior to the petition date, as constructively fraudulent transfers. Specifically, the trustee alleges that the debtor was insolvent at the time of the execution and did not receive reasonably equivalent value in exchange for the obligations it incurred

by executing the promissory note and the security interest it granted to the defendant. Second, the trustee seeks avoidance and recovery of a $50,000.00 payment made by the debtor to the defendant during the two–year period prior to filing, pursuant to §§ 544, 548, 550 and 551 and N.C. Gen. Stat. § 39–21.1 et seq. In support, the trustee asserts that Mr. Winslow was the primary beneficiary of the proceeds of the loan, $597,410.00, which were deposited in the Winslows' personal bank account and used to operate Winslow Farms. This, according to the trustee, establishes that the debtor did not receive reasonably equivalent value in exchange for incurring the obligation and the payment in partial satisfaction of the indebtedness because Mr. Winslow, not the debtor, was the direct beneficiary of the loan proceeds and used them to finance his personal farming operations.

      The facts and allegations in the complaint therefore, support the trustee's assertion that the debtor did not receive any benefit, direct or indirect, in exchange for the liability it incurred by executing the promissory note. The complaint establishes that Mr. Winslow, and not the debtor, was the recipient of all the loan proceeds. Because the loan proceeds were deposited in the Winslows' personal bank account, the debtor did not receive reasonably equivalent value in exchange for the obligations it incurred under the promissory note. See Frontier Bank v. Brown (In re N. Merchandise, Inc.), 371 F.3d 1056, 1059 (9th Cir. 2004) (holding that debtor, who was not a party to the transaction, received reasonably equivalent value in exchange for the security interest it granted to secure a shareholder's indebtedness, where the proceeds of the loan were directly deposited into the debtor's bank account); Stillwater Nat'l Bank and Tr. Co. v. Kirtley (In re Solomon), 299 B.R. 626, 637 (B.A.P. 10th Cir. 2003) (concluding that where the company owned by debtors was sole recipient of loan proceeds, the debtors did not receive reasonably equivalent value when they granted a lien securing their guarantee obligation). Although a co–obligor under

9

the promissory note, the obligations the debtor incurred were solely for the benefit of a third party, Mr. Winslow. See, e.g., Jeffery Bigelow Design Grp., Inc., 956 F.2d at 485 (stating that although reasonably equivalent value can come from a third party, a transfer solely for the benefit of that third party does not establish reasonably equivalent value); Renegade Holdings, 457 B.R. at 444. Because debtor did not receive any of the proceeds of the loan, the liability it incurred as a result of the promissory note, resulted in a net loss to the debtor's estate. Jeffery Bigelow Design Grp., Inc., 956 F.2d at 484. It is apparent that whatever the debtor received, if anything, was not reasonably equivalent to the $600,000.00 obligation it undertook. See Freeland v Enodis Corp. (In re Consol. Indus. Corp.), 292 B.R. 354, 361–62 (N.D. Ind. 2002) (noting that where the debtor's parent company retained a portion of funds to be used on behalf of debtor and there was no evidence that the debtor received anything for the retained amount, no reasonably equivalent value was provided within meaning of § 548(a)(1)). Accordingly, the debtor did not receive reasonably equivalent value in exchange for incurring the obligations set forth in the promissory note.

The second cause of action involves the $50,000.00 payment, which took place on October 31, 2008. The allegations in the trustee's complaint establish the plausible belief that the debtor did not receive reasonably equivalent value in exchange for the $50,000.00 payment it made to the defendant. The factual allegations reveal and the trustee does not dispute that this payment was made pursuant to the promissory note, to which the debtor was an obligor along with the Winslows. Although the defendant asserts that this payment was a partial repayment of an antecedent debt,[5]

---

[5]The defendant's argument overlooks the fact that the debtor did not receive reasonably equivalent value in exchange for incurring the obligations under the promissory note. Numerous courts addressing whether a debtor's transfer of funds in satisfaction of an outstanding obligation is constructively fraudulent, have concluded that the debtor received reasonably equivalent value in exchange. See, e.g., O'Toole v. Karnani (In re Trinsum Grp., Inc.), 460 B.R. 379, 388 (Bankr.

where the underlying obligation or debt has been avoided, any payments on account thereof "could no longer be supported by the value of debt satisfaction since no debt would exist." TSIC, Inc. v. Thalheimer (In re TSIC, Inc.), 428 B.R. 103, 115 (Bankr. D. Del. 2010); Daly v. Fusco (In re All–Type Printing), 274 B.R. 316, 325 (Bankr. D. Conn. 2002) (stressing that because the underlying obligation was not avoidable by the trustee, the subsequent payments made by the debtor were on account of an antecedent debt and, therefore, were made for reasonably equivalent value and could not be avoided).[6]

---

S.D.N.Y. 2011); Stalnaker v. Gratton (In re Rosen Auto Leasing, Inc.), 346 B.R. 798, 804–05 (B.A.P. 8th Cir. 2006) (concluding that the debtor's satisfaction of an existing promissory note by payment thereof constituted reasonably equivalent value and was not an avoidable fraudulent conveyance); In re Montalvo, 324 B.R. 619, 632 (Bankr. W.D. Ky. 2005) (finding that the debtor received reasonably equivalent value in exchange for two monthly payments made to his as reimbursements for paying the debtor's existing unsecured loan with a bank in Puerto Rico); Barber v. Dunbar (In re Dunbar), 313 B.R. 430, 439 (Bankr. C.D. Ill. 2004); Official Comm. of Unsecured Creditors of Heilig–Meyers Co. v. Wachovia Bank, N.A. (In re Heilig–Meyers Co.), 297 B.R. 46, 51–52 (Bankr. E.D. Va. 2003); Dowden v. First Sec. Bank (In re Mid–South Auto Brokers), 290 B.R. 658, 665 (Bankr. E.D. Ark. 2003); Butler v. Loomer (In re Loomer), 222 B.R. 618, 623 (Bankr. D. Neb. 1998); Marshack v. Wells Fargo Bank (In re Walters), 163 B.R. 575, 581 (Bankr. C.D. Cal. 1994) (emphasizing that the debtor received reasonably equivalent value in exchange for payments made on account of the debtor's own personal debt owed to Wells Fargo because "each of the Debtor's payments resulted in a dollar–for–dollar reduction in [the] Debtor's liability under the initial Guaranty."); Meister v. Jamison (In re Jamison), 21 B.R. 380, 381–82 (Bankr. D. Conn. 1982) (holding that the debtor received reasonably equivalent value in exchange for the loan repayments on a previously executed promissory note, recognizing that "[t]here was no depletion of the debtor's estate since each payment was matched by an equivalent reduction in the debtor's debt."). This line of cases, however, is distinguishable from the instant case where the obligation itself is being challenged as a constructively fraudulent transfer.

[6]Essential to the court's decision in All–Type Printing, however, was the fact that the trustee did not seek to avoid the debtor's incurrence of the underlying obligation, instead seeking to avoid the monthly payments. 274 B.R. at 324 (holding that "the underlying analysis would be different had the Trustee also sought and obtained an avoidance of the incurring . . . obligation."). Unlike All–Type Printing, the underlying obligation in this case is not time–barred and the trustee is seeking to avoid both the obligation and the corresponding payment made by the debtor.

11

> If the court avoids an obligation under section 548 or it is otherwise not binding on the debtor, transfers made by the debtor on account of that obligation are not made for reasonably equivalent value, and may be set aside as actually or constructively fraudulent if the other requirements for actual or constructive fraud are met.

5 Collier on Bankruptcy ¶548.03[a].  Because the trustee has sufficiently plead avoidance of the debtor's incurrence of the underlying obligation, the debtor's payment to the defendant was for less than reasonably equivalent value because the debt itself may be avoided and, therefore, eliminated.

The court finds, based on the record, that the trustee's complaint for avoidance and recovery of the constructive fraudulent transfers contains sufficient facts to support a plausible belief that the debtor did not receive reasonably equivalent value in exchange for the obligations set forth in the promissory note and in return for the $50,000.00 payment made to the defendant.  Because the trustee has sufficiently plead the requirements for both causes of action under § 548(a)(1)(B), dismissal is not appropriate.

## CONCLUSION

Based on the foregoing, the trustee's complaint states claims for relief under § 548(a)(1)(B) that are plausible and, therefore, are not subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Bankruptcy Procedure 7012(b).  Accordingly, the defendant's motion to dismiss is **DENIED.**

## END OF DOCUMENT